BETTY LOU NELSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nelson v. Commissioner
Docket No. 5836-70.
United States Tax Court
T.C. Memo 1973-80; 1973 Tax Ct. Memo LEXIS 210; 32 T.C.M. (CCH) 356; T.C.M. (RIA) 73080; April 9, 1973, Filed Charles P. Cocke, for the petitioner. Eli H. Schmukler, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioner's Federal income taxes: Taxable Year
Deficiency 1964
$555.08
1965
569.87
1966
529.98
1967
468.00
*211 The issues presented for decision are : (1) Whether petitioner must include in her gross income for the years 1964 through 1967 amounts she received from her former husband pursuant to the 2 provisions of a written separation agreement and, subsequently, a divorce decree; (2) whether for the years 1964 and 1965 the petitioner was entitled to be taxed under the rates applicable to a "head of household;" and (3) whether for the years 1964 and 1965 the petitioner was required to compute taxable income by itemizing deductions rather than using the standard deduction. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Betty Lou Nelson (herein called petitioner) was a legal resident of Arlington, Virginia, when she filed her petition in this proceeding. She was formerly known as Betty Lou Page. Petitioner failed to file a Federal income tax return for the year 1964. A substitute return for that year was prepared by the respondent. For the years 1965 and 1967 the petitioner filed her Federal income tax returns with the district director of internal revenue at Richmond, Virginia, and her return for 1966 was filed with the district director *212 of internal revenue at Los Angeles, California. On December 1, 1946, the petitioner married Ernest H. Page in Las Vegas, Nevada. They have two children, Gary Ernest and Robin Loree. Marital difficulties arose between the petitioner and Ernest Page and they decided to separate. One attorney was engaged to 3 represent both of them in preparing and negotiating the terms of a separation agreement. On December 10, 1963, a Separation and Property Agreement was entered into and executed by the petitioner and Ernest Page. The pertinent provisions of that agreement are as follows: This is an agreement between BETTY LOU PAGE, hereinafter called "wife" and ERNEST H. PAGE, hereinafter called "husband." * * * 5. Husband shall pay to the wife the sum of $475.00 per month until the daughter reaches the age of 21 years of age and thereafter the sum of $332.50 per month, plus medical and dental expenses, until the son reaches the age of 21, provided, however, that if parties are divorced and wife remarries, husband shall pay to the wife for the support of each child the sum of $137.50 per month until the child reaches the age of 21. * * * 11. Husband shall maintain his present *213 G.S.I. policy in the amount of $10,000 as term insurance until both children have reached the age of 21, with the children named as beneficiaries. Husband shall further continue health and accident insurance for Robin and Gary under the plan available to government employees. Although Ernest Page failed to make some of the payments called for by the separation agreement and on other occasions made the payments with checks drawn on an account in which there were insufficient funds, he did make some payments pursuant to the terms of the Separation and Property Settlement Agreement. On the occasions when Ernest Page either failed to make the payment called for by the separation agreement or made payment with a 4 check drawn on an account in which there were insufficient funds, petitioner commenced legal action against him in order to collect the amounts due her under the terms of the separation agreement. To obtain judicial enforcement of the separation agreement, the petitioner instituted a law suit and filed with the Court the Separation and Property Settlement Agreement, a copy of which was in the possession of her attorney. As a result of petitioner's having instituted *214 various law suits against Ernest Page for the enforcement of the terms of the Separation and Property Settlement Agreement, he was occasionally ordered by the Circuit Court of Arlington County, Virginia, to pay the arrearages. Pursuant to the terms of the Separation and Property Settlement Agreement, petitioner received the sums of $5,034.50 and $5,335 from Ernest Page in the taxable years 1964 and 1965, respectively. In January 1964, one month after the execution of the Separation and Property Settlement Agreement, petitioner instituted a proceeding to obtain a Decree of Divorce. On July 27, 1966, the Circuit Court of Arlington County, Virginia, issued a Decree of Divorce "A Vinculo Matrimonii" which provides, in pertinent part, as follows: ADJUDGED, ORDERED AND DECREED * * * that the Defendant [Ernest Page] shall pay to the Complainant [petitioner] by the first day of each month the sum of $475.00 per month, plus medical and dental expenses, 5 until the daughter reaches the age of 21 years or is otherwise emancipated, and thereafter by the first day of each month the sume of $377.50 per month, plus medical and dental expenses, until the son reaches the age of 21 years, *215 or is otherwise emancipated, and thereafter by the first day of each month the sum of $200.00 per month, provided, however, that if Complainant remarries, Defendant shall pay to the Complainant for the support of each child the sum of $137.50 per month until the child reaches the age of 21 years or is otherwise emancipated; that the Defendant shall maintain his present $10,000 National Service Life Insurance policy with the minor children of the parties as joint beneficiaries and that the Defendant shall maintain his present $20,000 government life insurance policy with each minor child of the parties as a joint beneficiary, the latter policy to remain so deisgnated only until such time as each minor child reaches the age of twenty-one years or completes four academic years of college education, whichever last occurs; * * * Pursuant to the provisions of the Decree of Divorce obtained by petitioner, she received the amounts of $5,567 and $3,000 from Ernest Page in the years 1966 and 1967, respectively. The amounts paid by Ernest Page pursuant to the Separation and Property Settlement Agreement and the Decree of Divorce were received directly by petitioner. She expended the amounts *216 received from Ernest Page, as welll as less than $1,000 per year of additional income, for the payment of various expenses incurred in supporting herself and her children. In determining whether she was entitled to claim an exemption for each of her children in the taxable years in issue, the petitioner considered the money received by her from Ernest Page, and expended 6 on behalf of the children, as a contribution to the support of the children made by her rather than as a contribution to the support of the children made by her former husband. In his notice of deficiency dated June 8, 1970, respondent determined that the amounts received by petitioner pursuant to the separation agreement and divorce decree were includable in her gross income for the years 1964 through 1967. He also determined that since the petitioner was not divorced or legally separated in 1964 and 1965, she did not qualify for "head of household" rates in those years and that her taxable income had to be computed by using itemized deductions. 7 OPINION 1. Alimony or child support payments. Petitioner contends that out of the $475 per month Ernest Page was required to pay her pursuant to the *217 written separation agreement and the divorce decree the sum of $275 was a payment for child support under section 71(b), [1] Internal Revenue Code of 1954. To the contrary, respondent asserts that all of the periodic payments received by petitioner during the years in question are, as a matter of law, includable in her gross income under section 71(a). [2] He argues 8 that both of the documents provide that petitioner's former husband was to pay her $475 per month until certain events occurred at which time the amount of the monthly payment was to be reduced. And, with the exception of payments to be made by the former husband at such times as the parties are divorced and the petitioner remarried, none of the payments were "fixed" by the specific terms of the separation agreement or divorce decree as child support payments. *218 We agree with the respondent. The settled law on this issue is painfully clear. The decision of the Supreme Court in Commissioner v. Lester, 366 U.S. 302 (1961), by which we are bound, requires that payments for child support be clearly "fixed" in either the divorce decree or the separation agreement. The Supreme Court refused to infer from the payment schedule in that case the amount of child support intended. It also dismissed as irrelevant the "intent" of the parties in making the agreement. Subsequently, this Court has said that "intent will not control" the characterization of the payments. Geraldine E. Grummer, 46 T.C. 674, 679 (1966); Jean Talberth, 47 T.C. 326 (1966); and see also Harbin v. United States, 432 F.2d 943 (C.A.) 6, 1970). In the Lester case the Supreme Court quoted the following statements from the hearings before the Senate Committee on Finance on H.R. 7378, 77th Cong., 2d Sess., p. 48: 9 If an amount is specified in the decree of divorce attributable to the support of minor children, that amount is not income of the wife * * *. If, however, that amount paid the wife includes the support of children, *219 but no amount is specified for the support of the children, the entire amount goes into the income of the wife * * *. In commenting on the Senate Finance Committee Report, the Supreme Court said (366 U.S. at 303): This language leaves no room for doubt. The agreement must expressly specify or "fix" a sum certain or percentage of the payment for child support before any of the payment is excluded from the wife's income. The statutory requirement is strict and carefully worded. It does not say that "a sufficiently clear purpose" on the part of the parties is sufficient to shift the tax. It says that the "written instrument" must "fix" that "portion of the payment" which is to go to the support of the children. Otherwise, the wife must pay the tax on the whole payment. The provisions contained in the Separation and Property Settlement Agreement entered into by the petitioner and her former husband, as well as those contained in the Decree of Divorce obtained by the petitioner, state that petitioner's former husband shall pay to the petitioner a specific sum of money each month. The amount of money to be paid is reduced, according to the documents, upon the daughter's *220 reaching age of twenty-one years and again when petitioner's son reaches the age of twenty-one years. However, the provisions fail to designate or "fix" any specific portion of the payment as payments made for the support of minor children. It is only when the parties are divorced and the petitioner remarried, 10 a contingency which had not occurred during the taxable years in question, that the monthly payments are again reduced and the amounts paid are "fixed" or designated as child support payments. Consequently, the language of the Separation and Property Settlement Agreement and the Decree of Divorce indicates that petitioner's former husband was only to pay the Federal income tax on the payments made to the petitioner at such time as petitioner remarried. The mere fact that payments made to petitioner during the years in issue could be allocated by inference or conjecture is not sufficient to shift the tax burden from petitioner to her former husband. Commissioner v. Lester, supra at 306. Head of household. In calculating petitioner's tax liability for the years 1964 and 1965, respondent applied the rate of tax applicable to a married person filing *221 a separate Federal income tax return instead of the rates applicable to a head of household, as claimed by petitioner.
In the years 1964 and 1965 Section 1 of the INTERNAL Revenue Code of 1954 provided that a separate rate of taxation should be applicable to persons qualifying as heads of household. An individual qualified as a "head of household if, and only if, such individual [was] not married [emphasis added] at the close of his taxable year." Section 1(b) (2).It was further provided that, for the purpose of determining an individual's marital status, "an 11 individual who is legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married." Section 1(b) (3) (B). The petitioner was not legally separated from Ernest Page by a Decree of Divorce until July 27, 1966. Thus, to qualify as head of a household the petitioner must have been "legally separated" from her former spouse under a Decree of Separate Maintenance. It is our view that the petitioner cannot be considered as "legally separated" under a Decree of Separate Maintenance merely because she and her husband were living separately and *222 payments were made by him pursuant to the terms of the written separation agreement. [3] Moreover, the existence of an order of a State court directing Ernest Page to pay petitioner for the support and maintenance of herself and the minor children of the parties does not mean that petitioner secured a Decree of Separate Maintenance. [4]
To be considered as "not married" within section 1 of the Code a taxpayer must have not only secured a Decree of Separate Maintenance but must have, in fact, been "legally separated" under the decree. Rafal v. United States, 267 F. Supp. 61 (D.C. Del. 1967); Palmquist v. United States, 284 F.Supp. 577 (D.C. Calif. 1967). Other than the Decree of Divorce, the only evidence in this record as to petitioner's marital status during the years in question was an Order of the Circuit Court of Arlington County, Virginia, dated May 12, 1964. That Order directed petitioner's former husband to pay to petitioner the arrearages and future payments due her under the terms of the Separation and Property Settlement *223 Agreement executed by both of them. It was merely an order judicially enforcing the terms of the contract between the parties. The Order is not a Decree of Separate Maintenance because it does not purport to direct petitioner and Ernest Page to live apart from one another; nor does it legally separate them in any other manner. We hold that the petitioner has failed to establish that she is entitled to the rate of taxation applicable to a head of household. Itemized deductions versus standard deduction. Respondent determined that the petitioner and Ernest Page were legally married in the years 1964 and 1965, and that he filed a separate Federal income tax return for those years and itemized his deductions. Section 142(a) of the Code provides that: The standard deduction shall not be allowed to a husband and wife if the tax of the other spouse is determined under section 1 on the basis of the taxable income computed without regard to the standard deduction. 13 Accordingly, we conclude that the petitioner is required to compute her taxable income for the years 1964 and 1965 by itemizing her deductions. Decision will be entered under Rule 50. Footnotes
1. SEC. 71 ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. * * * (b) Payments to Support Minor Children. - Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support. ↩
2. SEC. 71(a) General Rule. - (1) Decree of divorce or separate maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) Written separation agreement. - If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) recieved after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly.↩
3. See John P. Quinn, T. C. Memo. 1970-8↩. 4. See Joseph E. Perusich, T. C. Memo. 1970-120↩.