ESTATE OF MIRIAM KROCK, DECEASED, NANCY DUSTY, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Krock v. Commissioner
Docket Nos. 6935-73, 1097-74.
United States Tax Court
T.C. Memo 1983-551; 1983 Tax Ct. Memo LEXIS 236; 46 T.C.M. (CCH) 1330; T.C.M. (RIA) 83551; September 8, 1983. Kennard I. Mandell and Harold Brown, for the petitioner. Charles W. Maurer, Jr., and Willard J. Frank, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in excess of $2,200,000 in the Federal income tax of Edward and Miriam Krock for 1964 through 1969. Respondent also initially determined that Mr. and Mrs. Krock were liable for section 6653(b) [1] additions to tax, but has conceded that Mrs. Krock is not liable for these additions. The issue, severed for separate trial, is whether Edward and Miriam Krock filed joint returns for the years in question. Miriam Krock died on August 29, 1978, and has been replaced as *237 a party in this proceeding by her estate. FINDINGS OF FACT At the time the petition was filed, Miriam Krock (hereinafter Mrs. Krock) was a legal resident of Brookfield, Massachusetts. Mrs. Krock was born on November 12, 1912. She gradeuated from the Boston University Sargent College of Physical Education with a bachelor of science degree in 1934. On July 30, 1937, she married Edward Krock (hereinafter Mr. Krock) and remained his wife until the date of her death. Mr. Krock was born in April 1912. He had little formal education. At an early age, however, he became involved in the organization, purchase, and sale of various business enterprises.During the years at issue, he was an internationally known financier. His business activities included many complicated and sophisticated financial transactions. Mrs. Krock never became involved in any of Mr. Krock's business activities. She was "family-oriented" in that she devoted her time to raising her two children. She was also involved in various community, School, religious, and *238 volunteer activities. Mrs. Krock left the family's business affairs to Mr. Krock. Mrs. Krock filed individual income tax returns under her maiden name, Miriam Alpert, for 1943 and 1944 and under the name of Miriam Krock for 1945 and 1946. Mr. Krock filed individual tax returns for 1943 through 1947. Records of the Internal Revenue Service show that joint returs in the names of Edward and Miriam Krock were filed for each of the years 1948 through 1969. During the period 1964 through 1969, Mrs. Krock, who had inherited property from her parents, received varying amounts of dividend and interest income, and she incurred certain deductible expenses. Beginning in the late 1950's, Robert Hurwitz, a certified public accountant, or employees in his office prepared the yearly tax returns filed in the name of Mr. and Mrs. Krock. Unless instructed otherwise, it was the policy of his office to prepare joint returns for married couples. Joan Robbins, Mr. Krock's secretary, provided Mr. Hurwitz' office with the information necessary for the preparation of income tax returns for Mr. and Mrs. Krock and for their two children, Richard and Nancy. Mr. Hurwitz never received any instructions *239 from Joan Robbins, Mr. Krock, or Mrs. Krock regarding the preparation of joint returns for Mr. and Mrs. Krock; nor did he receive instructions to prepare separate returns for Mrs. Krock. He received no communication of any kind from Mrs. Krock. Mrs. Krock did not sign the joint Federal income tax return forms filed in her and Mr. Krock's names for 1964 through 1969. She did, however, maintain accurate records of her separate income and deductible expenses for 1964 through 1969. She reported to Joan Robbins any and all items of personal income. The returns filed for 1964 through 1969 specifically identify by name both the payors of dividends and interest to Mrs. Krock and the payees of medical expenses and charitable contributions. Both income and deductions attributable to Mrs. Krock are recorded on the returns in precise amounts. On April 11, 1973, a Grand Jury of the United States District Court for the District of Massachusetts returned a seven-count indictment against Mr. Krock charging him with income tax evasion for 1966, 1967, and 1968, and with subscribing to income tax returns for 1966 through 1969 containing false statements. Mr. Krock did not appear for arraignment *240 on the indictment, and a warrant was issued for his arrest. He has not been taken into custody and, during at least part of the time since his indictment, Mr. Krock has lived in the Bahamas. On April 20, 1973, the Commissioner made jeopardy assessments against Mr. and Mrs. Krock, jointly and severally, for 1965 through 1969. Notices of the Federal tax liens arising from these assessments were filed on April 20, 1973. The parties have instituted several actions in local courts in respect to the liens arising from these jeopardy assessments. In a statutory notice of deficiency dated December 13, 1973, the Commissioner also determined a deficiency in income tax due from Mr. and Mrs. Krock for 1964; however no jeopardy assessment has been made for that year. An affidavit executed in Nassau by Mrs. Krock on April 27, 1973, dealing with the returns for 1966 through 1969, the years for which Mr. Krock was indicted, states in part: 8. In so far as the returns are concerned, I have carefully reported to Mr. Krock's accountant through Mr. Krock's secretary any and all items of personal income and I am assured that these items have been fully, completely, and accurately reported *241 on the returns in question. I have had every reason to believe that any and all income which Mr. Krock had responsibility to report was in fact reported. * * * In addition, the following statements were made with respect to the returns for 1965 through 1969 in a Motion for Declaratory Order and Injunction, filed on behalf of Mrs. Krock by her attorney on September 5, 1974, in an action entitled "Mrs. Miriam Krock vs. Mr. Johnnie M. Walker [sic], Commissioner of Internal Revenue Service," and others, Civil No. 73-1388-S: 7. Plaintiff Miriam Krock has fully and completely reported any and all income which she has received or earned in compliance with the Internal Revenue Laws of the United States, to the very best of her ability. 8. All such income was duly reported to Mr. Krock's secretary and office manager, Miss Joan Robbins, and, on information and belief was in turn reported to Mr. Krock's accountant, Mr. Robert Hurwitz, and included by him in the tax returns filed by Mr. Hurwitz with the Internal Revenue Service on Mr. Krock's behalf. 9. The returns in question were not signed by the plaintiff, Miriam Krock. OPINION Careful analysis of the available evidence *242 leads us to conclude that, even though Mrs. Krock did not sign the 1964 through 1969 returns, they were intended by her and Mr. Krock to be, and were, joint returns. Accordingly, this issue, severed for separate trial, is decided in favor of respondent. Section 6013(a) authorizes a husband and wife to make jointly a single return of their income, except in specified limited circumstances. However, section 1.6013-1(a)(2), Income Tax Regs., requires that: "A joint return of a husband and wife (if not made by an agent of one or both spouses) shall be signed by both spouses." In spite of this requirement, it has long been settled that when an income tax return is intended by both spouses as a joint return, their intention to file jointly may be given effect even in the absence of the signature of one spouse. See, e.g., Howell v. Commissioner,10 T.C. 859, 866 (1948), affd. per curiam 175 F.2d 240 (6th Cir. 1949); Kann v. Commissioner,18 T.C. 1032, 1045 (1952), affd. 210 F.2d 247, 251 (3d Cir. 1953); Federbush v. Commissioner,34 T.C. 740, 757 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963). *243 The question of the spouses' intention is one of fact. Federbush v. Commissioner,325 F.2d at 1, 2. In determining the intent of the parties, it has been held by the United States Court of Appeals for the Second Circuit that, if the evidence indicates that one spouse did not sign a purportedly joint return, the burden shifts to the Government to produce additional evidence on the issue. O'Connor v. Commissioner,412 F.2d 304, 309 (2d Cir. 1969), affg. on this issue a Memorandum Opinion of this Court. Respondent concedes that Mrs. Krock did not sign the returns for the years at issue; however, he contends that the evidence which he has offered has sustained, pursuant to O'Connor v. Commissioner,supra, his burden of producing additional evidence to show Mrs. Krock's intent to file joint returns with her husband. Although we acknowledge the difficulty in determining the intent of a person now deceased, we find that the evidence produced by respondent does in fact demonstrate Mrs. Krock's intent to file joint returns. The evidence here shows that Mrs. Krock "customarily left the responsibility for making financial decisions *244 to her husband." Campbell v. Commissioner,56 T.C. 1, 13 (1971). Mr. Krock engaged in numerous sophisticated large business ventures described in general terms in our findings. According to her daughter's testimony, Mrs. Krock "never" involved herself in Mr. Krock's business affairs. Rather, she devoted herself to raising her children and also spent much of her time involved in community service and in various school, religious, an volunteer activities. In view of this division of labor between Mr. and Mrs. Krock, it is reasonable to conclude that Mrs. Krock left the responsibility for the filing of income tax returns, clearly a business matter, to her husband. Mrs. Krock, however, did have a separate income of her own which was sufficient to obligate her to file income tax returns. We conclude that Mrs. Krock was fully aware of her obligation to file returns reporting her separate income. Our conclusion is based on the following evidence of record. Mrs. Krock herself filed separate income tax returns after her marriage for the years 1943 through 1946. In addition, during the years at issue, Mrs. Krock meticulously reported all items of income and deductible *245 expenses to Mr. Krock's secretary for relay to Mr. Krock's accountant. [2]
Most significant are Mrs. Krock's own statement made in her affidavit of April 27, 1973, and the statements made by her attorney in the Motion for Declaratory Order and Injunction filed on September 5, 1974, which are quoted in our findings. [3] These statements demonstrate Mrs. Krock's cognizance of her obligation to report her separate income, her feeling that she had met her obligation by submitting the detailed information regarding her income and deductible expenses to Mr. Krock's secretary, and, most important, her knowledge that such information was incorporated into the returns filed on the Krocks' behalf. *246 Further evidence of the Krocks' intent to file joint returns is found in a long history of the filing of joint returns by Mr. and Mrs. Krock extending 16 years from 1948 through 1963. From this history we may fairly infer the Krocks' continued intent to file joint returns for the years at issue. See Federbush v. Commissioner,34 T.C. at 756-758. Although the actual returns for 1948 through 1963 were not introduced in evidence, Internal Revenue Service Certificates of Assessments and Payments were introduced for those years. Those certificates bear the names of both Mr. and Mrs. Krock, indicating that joint returns were filed for those years. [4] In view of the fact that there was no suggestion that either Mr. or Mrs. Krock filed separate returns for those years, or that Mrs. Krock ever requested that separate returns be filed on her behalf, [5] the clear inference to be drawn from the tax return history is that Mrs. Krock merely continued to follow the pattern of filing joint returns in 1964 through 1969 which had already been established during the earlier 16 years. Sharwell v. Commissioner,419 F.2d 1057, 1059-1060 (6th Cir. 1969), remanding *247 a Memorandum Opinion of this Court. All of the foregoing evidence leads us to conclude that Mrs. Krock left the responsibility for preparing and filing the tax returns for the years at issue to her husband and intended the returns to be filed as he chose. Her actions and statements described above demonstrate that Mrs. Krock implicitly designated her husband as her agent to file returns on her behalf, thereby giving her tacit consent to the filing of joint returns. Heim v. Commissioner,251 F.2d 44, 45 (8th Cir. 1958), affg. 27 T.C. 270 (1956). We find the Court's statement in O'Connor v. Commissioner,supra at 309, *248 to be particularly relevant to the instant situation: In the context of * * * [the wife's] subtantial gross income, her knowledge that a return had to be filed showing that income and of * * * [the husband's] expert knowledge of the requirements of preparing and filing tax returns, it may be inferred that * * * [the wife] intended to have * * * [the husband] file for her whatever statement of income was legally required. To this extent, * * * [the husband] was acting as her agent. His inclusion of * * * [the wife's] income and deductions in the return filed and his subsequent failure to testify on the issue during the trial furnish additional supporting inferences. * * * Thus we conclude that Mr. and Mrs. Krock intended the 1964 through 1969 returns to be, and that they were, joint returns. [6]
To reflect the *249 foregoing, An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
2. We find no evidence in the record which indicates that Mrs. Krock may have reported this information under duress. Compare Brown v. Commissioner,51 T.C. 116, 120↩ (1968).
3. Both of these ex parte statements are admissible in evidence pursuant to Rule 801(d)(2) of the Federal Rules of Evidence as admissions made by Mrs. Krock (Fed. R. Evid. 801(d)(2)(A)) or by her attorney as her agent (Fed. R. Evid. 801(d)(2)(D)↩).
4. An employee of the Internal Revenue Service who is authorized to testify regarding IRS records testified at trial that Certificates of Assessments and Payments are used to keep a record of returns filed in the names of particular taxpayers. ↩
5. The argument advanced by Mrs. Krock's counsel that Mrs. Krock's intent to file joint returns is negated by her failure to authorize the preparation of joint returns becomes unpersuasive in view of the fact that she never requested that separate returns be filed on her behalf.↩
6. Contrary to the conclusion that we have reached, Mrs. Krock verified her petitions in these proceedings; and in her verifications she stated that the returns in question was not joint returns. These ex parte affidavits are not evidence. Rule 143(b), Tax Court Rules of Practice and Procedure; Fed. R. Evid. 802↩.